UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RONJI JENKINS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-5946** |
| **J. GLASS, ET AL** | **SECTION "E" (4)** |

## PARTIAL REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and(2)**.

On July 27, 2017, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the Plaintiff participating by telephone conference call.[2]

### I.   Factual and Procedural Background

The Plaintiff, Ronji Jenkins ("Jenkins"), is an inmate housed at the Jefferson Parish Correctional Center in Gretna, Louisiana, at the time of the filing of this *pro se* and *in forma pauperis* complaint under 42 U.S.C. § 1983. Jenkins filed this complaint against Deputy Sergeant J. Glass ("Glass"), Sergeant P. Harris ("Harris"), Deputy B. Bonvillian ("Bonvillian"), Deputy Mendozer ("Mendozer"), Captain Carter, and the Jefferson Parish Correctional Center ("JPCC").

Jenkins alleges that, on March 9, 2017, there was an altercation in Pod 4BR. R. Doc. 4-1, p. 6. Jenkins alleges that Harris and Glass immediately rushed in with pepper spray and a tazer, followed by Bonvillian and Mendozer. Jenkins states that he immediately turned his back to Harris,

---

[1]766 F.2d 179 (5th Cir. 1985).

[2]R. Doc. No. 9. The plaintiff was sworn prior to testifying.

who then pepper-sprayed him. *Id.* Thereafter, Jenkins alleges that Glass then shot him in the back with the tazer. *Id.*

Jenkins states that he was then brought to the prison medical center where he was seen by Ms. Cheryl of the medical staff and Captain Carter. *Id.* It was at the prison medical center that he explained everything to Carter. In turn, Jenkins alleges that Carter informed him that "had it been me, I would have fired your black ass with that taser [sic], so consider yourself lucky." *Id.* According to Jenkins, it was virtually impossible for him to have been resisting the officers, as his back was to them at the time of the incident.

## II. *Spears* Hearing

On July 27, 2017, a *Spears* Hearing was conducted. Jenkins was sworn in and testified to the following:

Jenkins stated that he along with three other inmates were fighting when Sergeants Harris and Glass entered with other deputies. At that time, the fighting stopped. However, when the officers opened the door, Sergeant Harris shot Jenkins with pepper spray. After being sprayed with the pepper spray, Jenkins stated that he turned his back. Jenkins alleges that, at that time, Sergeant Glass shot him with the tazer. Further, Jenkins stated that he was the only one pepper sprayed and tazered. Jenkins further reiterated that he stopped automatically.

A couple of days after the incident, Jenkins asked for an investigation as to why he was pepper sprayed and tazed, but received no response. Jenkins states that he requested another investigation, stating that the tazer video will verify his story.

Jenkins alleges that he received a hickey on his head from a fall that lasted about a week. Also, Jenkins alleges he suffered some marks to his back from the needles attached to the tazer.

Furthermore, Jenkins stated that disciplinary charges were brought against him for fighting. He did not mention that he received any charges for resisting the officers. As a result of the disciplinary charges brought against him, Jenkins received fifteen days, while the other two inmates received seven days and fifteen days. Jenkins stated that he did not start the fight and tried to appeal the charge imposed by the disciplinary board; however, his appeal was denied.

Moreover, Jenkins states that he sued Sergeant Glass for the use of the tazer and Sergeant Harris for the use of the pepper spray because he was not resisting, and further, found it excessive. In addition, Jenkins is suing the JPCC because they hired individuals disposed to violence. Jenkins further clarified that he was not looking for punishment against Bonvillian, Mendozer, and Captain Carter, explaining that he only named those individuals because they were there.

Jenkins is seeking damages for his pain and suffering from the incident. He is currently awaiting trial.

### III. **Standard of Review for Frivolousness**

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners, proceeding *in forma pauperis*, upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal

theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the Plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

## IV. Analysis

### A. Claims Against Jefferson Parish Correctional Center

Jenkins named the JPCC as a defendant in this action. Section 1983 imposes liability on any "person" who violates someone's constitutional rights "under color of law." 42 U.S.C. § 1983; *see Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Under federal law, a county prison facility is not a "person" within the meaning of the statute. *Powell v. Cook Cty. Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993); *Hancock v. Washtenaw Cty. Prosecutor's Office*, 548 F. Supp. 1255, 1256 (E.D. Mich. 1982); *Cullen v. DuPage Cty.*, No. 99-c-1296, 1999 WL 1212570, at *1 (N.D. Ill. Dec. 14, 1999); *Whitley v. Westchester Cty. Correctional Facility Admin.*, No. 97-0420, 1997 WL 659100, at *6 (S.D.N.Y. Oct. 22, 1997). Thus, the JPCC is clearly not a proper defendant in this case.

In addition, a parish prison is not a proper defendant because it lacks capacity to sue or be sued as required by Rule 17(b) of the Federal Rules of Civil Procedure and state law. An entity's capacity to be sued must be determined by reference to the law of the state in which the district court sits. Fed. R. Civ. P. 17(b). Thus, the Court will look to Louisiana law to determine if the

4

JPCC can be sued.

Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as ". . . an entity to which the law attributes personality, such as a corporation or partnership." La. Civ. Code art. 24.

Although Louisiana courts have not ruled on the issue of whether a parish jail is a juridical person that can sue or be sued, the Louisiana Supreme Court in *Roberts v. Sewerage and Water Board of New Orleans*, 634 So. 2d 341 (La. 1994), set forth a framework within which to determine an entity's juridical status. The Louisiana Supreme Court in *Roberts* stated:

> [t]he important determination with respect to the juridical status or legal capacity of an entity is not its creator, nor its size, shape, or label. Rather, the determination that must be made in each particular case is whether the entity can appropriately be regarded as an additional and separate government unit for the particular purpose at issue. In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person, separate and distinct from other government entities, when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity. . . .Such a determination will depend on an analysis of specifically what the entity is legally empowered to do.

634 So. 2d at 346-47 (citation omitted). In concluding that the Sewerage and Water Board was capable of being sued, the *Roberts* court focused its analysis on the independent management, financing, and operations of the Board. *See id.* at 352.

By contrast, in *City Council of Lafayette v. Bowen*, 649 So. 2d 611, 616 (La. App. 3rd Cir. 1994), *writ denied*, 650 So. 2d 244 (La. 1995), the Louisiana Third Circuit Court of Appeal held that, under the *Roberts* analysis, the City Council of Lafayette had no capacity to sue or be sued. In so holding, the court expressly found "no authority, constitutional, statutory, or via home rule charter that authorizes the Lafayette City Council to institute of its own motion, a lawsuit." *Id.* at 613.

Moreover, Louisiana law divides the responsibility for its Parish jails. The Parish is

charged with its jails' physical maintenance. La. Rev. Stat. Ann. § 15:702. However, the duty to administer and operate the jails falls on the Sheriff of each Parish. La. Rev. Stat. Ann. § 15:704. The office of sheriff is a constitutionally created office in Louisiana, existing separately from the Parish government. La. Const. art. 5 § 27; *see Langley v. City of Monroe*, 582 So. 2d 367, 368 (La. App. 2nd Cir. 1991) (holding that the parish could not be liable for injuries attributed to the sheriff).

Under the *Roberts* framework, the jail facilities are not "legally empowered to do" anything independently of either the respective Parish officials or the Parish Sheriff. *See Roberts*, 634 So. 2d at 347. The prison is not a separate entity, but merely a shared branch or facility of these greater entities.

Thus, a parish jail is "not an entity, but a building." *See Jones v. St. Tammany Parish Jail*, 4 F. Supp. 2d 606, 613 (E.D. La. 1998)(dismissing with prejudice the St. Tammany Parish Jail as an improper defendant); *see also, Kerr v. Orleans Parish Sheriff's Office, Prison*, No. 15-0746, 2015 WL 4755174 (E.D. La. Aug, 10, 2015). As such, the claims against the JPCC are therefore frivolous and otherwise fails to state a claim for which relief can be granted.

**B.**     **Claims Against Sheriff Newell Normand**

To the extent that Jenkins meant to state claims against Sheriff Normand, his complaint is frivolous. However, a supervisory official cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). Moreover, a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged

constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120 (5th Cir. 1980).

Jenkins has not alleged that Sheriff Normand was personally involved in the excessive force. Without some personal action or connection, which would render Sheriff Normand liable under § 1983, Jenkins's claims against Sheriff Normand as a supervisory official are frivolous, and otherwise, fail to state a claim for which relief can be granted.

Jenkins also has not alleged that he has suffered any constitutional injury directly resulting from any order, training, or other policy implemented by Sheriff Normand, which would create liability under § 1983. *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 1991); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *see also*, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988).

For these reasons, Jenkins's claims against the Sheriff in his supervisory role over the prison are frivolous and otherwise fail to state a claim for which relief can be granted under § 1915, § 1915A, and § 1997e.

### C. Claims against Deputy B. Bonvillian, Deputy Mendozer, and Captain Carter

During the *Spears* Hearing, Jenkins clarified that he did not seek any punishment against Bonvillian, Mendozer, and Captain Carter, nor did he really mean to sue Bonvillian, Mendozer, and Captain Carter. As such, those claims are frivolous, and otherwise, fail to state a claim for which relief can be granted under § 1915, § 1915A, and § 1997e.

### D. Excessive Force

Finally, Jenkins has alleged excessive force against Sergeants Glass and Harris. Jenkins alleges that Sergeant Harris pepper sprayed him and Sergeant Glass tazered him when they entered

the pod, even though Jenkins was no longer fighting or posing a threat. Moreover, Jenkins alleges that his back was turned to Sergeant Glass when Sergeant Glass tazered him.

The United States Supreme Court has concluded that, with respect to a Fourteenth Amendment excessive force claim, a pretrial detainee must show only that the use of force was "objectively unreasonable." *Kingsley v. Hendrickson*, __ U.S. __, 135 S. Ct. 2466, 2470 (2015) (effectively abrogating the lower federal courts' application to pretrial detainees of the Eighth Amendment excessive force standards in *Hudson v. McMillian*, 503 U.S. 1 (1992)). The reasonableness of the force turns on "whether the force was unnecessary - not whether the use of force was so unnecessary as to show the requisite state of mind to support an Eighth Amendment excessive force claim." *Thompson v. Beasley*, 309 F.R.D. 236, 247 (N.D. Miss. 2015); *Brown v. Gusman*, No. 15-1491, 2015 WL 6827260, at *5 (E.D. La. Nov. 6, 2015).

Under the *Kingsley* standards, the question is whether the defendants' actions were "'rationally related to a legitimate nonpunitive governmental purpose'" of maintaining order and discipline in the jail. *See Thompson*, 309 F.R.D. at 247 (quoting *Kinglsey*, 135 S. Ct. at 2473). The Supreme Court provided some considerations to be addressed by a reviewing court in resolving this question:

> Considerations, such as the following, may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. *See*, *e.g.*, *Graham* [*v. Connor*, 490 U.S. 386, 396 (1989)]. We do not consider this list to be exclusive. We mention these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force.

*Kingsley*, 135 S. Ct. at 2473.

Based on the allegations and testimony from the Plaintiff, the Court cannot determine at this point in the litigation whether the force used by defendants Sergeants Harris and Glass was

objectively reasonable or necessary under the circumstances. Certainly, Jenkins alleges that the inmates had ceased fighting at the time the officers entered and that he was not resisting in any fashion. Considering the allegations, the Court cannot determine that, at this time, that: (i) the need for the use of force matched the amount of force used; (ii) there were any efforts made by the officer to temper or to limit the amount of force used; (iii) the threat reasonably perceived by the officer cautioned in favor of the use of force given that the fighting had allegedly ceased; and (iv) Jenkins was resisting, given his allegations to the contrary. For this reason, the Court should allow the excessive force claims against these defendants to proceed forward.

## V. Recommendation

It is, therefore, **RECOMMENDED** that Ronji Jenkins's § 1983 claims against the Jefferson Parish Correctional Center, Sheriff Newell Normand, Deputy B. Bonvillian, Deputy Mendozer, and Captain Carter be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted under 28 U.S.C. § 1915, § 1915A, and 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that Jenkins's § 1983 claims of excessive force against Deputy Sergeant Glass and Sergeant Harris be allowed to proceed and remain referred to the undersigned Magistrate Judge for further pretrial proceedings.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[3]

New Orleans, Louisiana, this 18th day of September 2017.

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[3] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.